BOMAR v. RAILROAD COMPANY.

1. A notice of appeal from a final judgment liberally construed as intended to include a notice of appeal from an intermediate order in the cause.

2. An order requiring security for costs to be filed by a day stated, or, in

default thereof, that plaintiff be non-suited, cannot be reviewed and reversed by a succeeding Circuit Judge.

3. No objection being raised to an order requiring non-resident plaintiffs to file security for the costs of the action, it is too late on appeal to make the point that this long acquiesced in rule is unconstitutional.

4. An order having been passed requiring plaintiffs to file security for costs by a given day or be non-suited, it was agreed that a deposit of $130 would be sufficient security. Thereupon plaintiffs' attorney gave to the clerk of court his due bill for $130, payable on demand, "the same being given him in this case for his receipt to me for deposit for security for costs," and the clerk at the same time gave to plaintiffs' attorney a receipt for $130 "deposit fee in this case in place of bond of costs in this case ;" but, in fact, no money passed. *Held,* that there was not a compliance with the order requiring security, for there was not an undertaking in the prescribed form, nor a deposit of any sum of money.

5. Parol evidence was admissible in this case to explain and contradict the clerk's receipt, but not the attorney's due bill.

6. A succeeding Circuit Judge did not err in failing to extend the time for plaintiffs to file security, (1) because he was not asked to; (2) because the order was final, and could not be reviewed or modified by a succeeding Circuit Judge. Section 195 of the Code does not apply.

7. The first order became final on the expiration of the time limited without compliance, but the practice is approved of taking a second order adjudging such non-compliance, and declaring the non-suit to have taken effect.

Before KERSHAW, J., Spartanburg, October, 1888.

This was an action by Martha I. Bomar and her husband against The Asheville & Spartanburg Railroad Company. The opinion states the case.

*Messrs. Thomson, Nichols & Moore,* for appellant.

*Messrs. Duncan & Sanders,* contra.

March 26, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. On March 28, 1887, an order was granted by his honor, Judge Aldrich, requiring the plaintiffs, who are, and were then, non-residents of the State, to enter into security for costs "by the first day of the next term of this court, and on failing to do so that they be non-suited." It is stated in

the "Case" that when this order was made the right of the defendant to require security for costs was neither admitted nor denied, but the granting of the order was not resisted upon the ground that the defendant had no right to require a non-resident to enter into security for the costs of an action instituted by him in the courts of this State. At October term, 1888, a motion was submitted by defendant to his honor, Judge Kershaw, to dismiss the complaint and for leave to enter up judgment of non-suit, upon the ground that security for costs had not been entered as required by the former order of the court. At the hearing of this motion a note of J. S. R. Thomson, Esq., one of the attorneys for the plaintiffs, was exhibited, of which the following is a copy, in which we have endeavored to preserve the interlineation and erasure as they appear in the original, to wit:

                                   clerk,
"$130.00.   Due F. M. Trimmier, one hundred and thirty dollars on demand (J. S. R. Thomson),[1] *the same being given him in the matter of Mrs. Bomar vs. R. R. for his receipt to me for deposit for security for costs.*

"23rd July, 1887.          J. S. R. THOMSON."

On this note appears the following endorsement in the handwriting of F. M. Trimmier, the then clerk:

"MRS. BOMAR
     "*vs.*          J. S. R. Thomson, note for costs.
"THE A. & S. R. R.
"Filed July 23, 1887.          F. M. TRIMMIER, Clerk."

At the same time a receipt, of which the following is a copy, was also exhibited, viz. :

"MRS. BOMAR,          Received of J. S. R. Thomson one
     "*vs.*          hundred and thirty dollars deposit fee
     "R. R.          in this case, in place of bond of costs in
                     this case.
"23rd July, 1887.          F. M. TRIMMIER, Clerk."

It also appeared from the affidavits submitted, which are set

---

[1] This name, which I have put in parentheses, was erased in the original.—REPORTER.

out in the "Case," that before the note and receipt above copied, were given it had been determined by the clerk, with the acquiescence of all parties, that the sum of one hundred and thirty dollars would be a sufficient amount to be deposited as security for the costs; but it was admitted that defendant's counsel knew nothing of the alleged private arrangement between the clerk and one of the counsel for plaintiffs, whereby the note and, receipt above mentioned were given. It is stated in the affidavit of Mr. Thomson that on the day the note was given he said to the clerk "that he was ready and willing to make the deposit in behalf of the plaintiffs, but that, as a matter of convenience to, himself, if the clerk was willing, he would give his individual obligation to Mr. Trimmier, individually, for the amount, and Mr. Trimmier, as clerk, give Mr. Thomson his receipt for the said sum as deposited with him. It was distinctly mentioned that it amounted to a loan of that amount by Mr. Trimmier individually to Mr. Thomson, and that on demand, if Mr. Trimmier wished it, Mr. Thomson would pay off said note, and that if not demanded before close of suit, and if plaintiff should gain the case, that the note should be returned to Mr. Thomson, if not previously paid, and the receipt returned to Mr. Trimmier." It is further stated in this affidavit that: "In giving this obligation Mr. Thomson drew it up without any reference to Mr. Trimmier being clerk of the court. Mr. Trimmier said that he would take it as an obligation to himself individually, but preferred, for his own convenience and recollection, to have some reference in it to the matter for which it was given, and at his request, after the due bill was written and signed by Mr. Thomson, the word 'clerk' was interlined, Mr. Thomson's signature stricken out, the words from 'the same' to 'for costs,' inclusive,[1] added, and the due bill again signed by Mr. Thomson," as we have attempted to indicate in the copy hereinbefore set out.

From the affidavit of T. R. Trimmier it appears that when he took charge of the clerk's office the note above referred to was "found filed with the undertakings for security for costs." In the affidavit of Mr. Sanders, one of the counsel for defendant, it is stated that when he learned that Mr. Thomson had given his

---

[1] The words italicised in the copy above given.

note to F. M. Trimmier, clerk, as security for the costs of this case, he "immediately called the clerk's attention to this fact and asked him if he regarded himself in any way as being responsible for the costs in this case, to which he replied that he did not—that he would file a piece of brown paper as his security for costs if the plaintiffs' attorney were to bring it and request that it be so filed."

Judge Kershaw held that the papers submitted to him—the order of Judge Aldrich, the note with its endorsement, and the receipt of the clerk—did not show a proper compliance with the order requiring security for costs, and in his remarks settling the case he says : "I paid very little attention to the statement of facts made, because I did not consider any personal contract between Mr. Thomson and Mr. Trimmier as capable of rendering such a transaction a compliance with said order." He therefore granted an order of non-suit, as asked for, and upon the entry of judgment in accordance therewith, the plaintiffs gave notice of appeal from "said orders, rulings, and judgments" upon the several grounds set out in the record. These grounds raise, substantially, but three questions : 1st. Whether there was error in granting the order requiring security for costs. 2nd. Whether the order so requiring such security was properly complied with. 3rd. Whether the plaintiffs should not still be allowed to give security for costs, if such security had not been properly given.

The first question involves the proposition that the rule of court, and the statute upon which it is based, are in conflict with the constitution of this State, as well as that of the United States. It seems to us that the plaintiffs are not in a position to make such a question. The proper time to raise it was when the original application was made to Judge Aldrich for the order requiring the plaintiffs to enter security for costs upon the ground that they were non-residents of this State. But the question was not then raised, and, on the contrary, no objection on any ground was then interposed to the granting of the order, and after it was granted no exception was noted in the proper time. Nor does it appear that any such point was presented to Judge Kershaw when the application was made for the final order. If the point

had been then raised, Judge Kershaw would have been entirely justified in declining to review and reverse an order of his predecessor upon the ground of error of law therein.   Until it was reversed by the proper authority, he was bound to regard it as a valid order, and the only question which was before him, or could properly come before him, was whether its requirements had been complied with.   See *McCollum* v. *Massey*, 2 Bail., 606.

As we have said, there was no exception taken to the order of Judge Aldrich at the proper time, and there is now no notice of appeal, *in terms*, from that order ; though, as the notice of appeal does say, "from which said orders, rulings, and judgment the plaintiff gave due notice of appeal," and the first ground imputes error in requiring security for costs, we may, by a liberal construction, which we are disposed to adopt, regard this as an attempt to appeal from the order of Judge Aldrich upon the ground that the statute and rule of court under which it was granted are unconstitutional.   Still, this is an attempt to obtain from this court a reversal of an order and judgment of the Circuit Court upon a ground not raised or considered in that court, which the well settled practice of this court forbids us from doing. *Tompkins* v. *A. & K. R. R. Co.*, 21 S. C., 420 ; *Hyrne* v. *Erwin*, 23 *Id.*, 226 ; *Chamblee* v. *Tribble, Ibid.*, 70 ; *McLure* v. *Melton*, 24 *Id.*, 559.   We must, therefore, decline to consider the constitutional question, which the appellants seek to raise in this court for the first time ; and we feel the more justified in doing so by the fact that the constitutionality of this law has, for a great length of time, and in very numerous instances, been acquiesced in without question.

As to the second question, we agree with his honor, Judge Kershaw, that the order requiring security for costs was not complied with in the manner required by law.   As may be seen by the numerous cases scattered through the reports of this State, so many controversies were continually arising as to the proper mode of complying with an order requiring security for costs, that the Court of Appeals, as far back as 1834, in the case of *Boyd* v. *Graham* (2 Hill, 558), deemed it necessary to prescribe a positive rule upon the subject, which will be found incorporated as rule 74 of the old court.   *Miller Com.*, page 44.   This rule

has been incorporated as rule X. in the Circuit Court rules now of force, and expressly provides that *"no other security for costs shall be regarded as a compliance with the order,"* except that prescribed by said rule. Under that rule an order requiring security for costs can be complied with only in one of two ways: 1st. By executing an undertaking in the form there prescribed, in which, by the act of 1839, incorporated as section 743 of the General Statutes, the signature of the surety should be witnessed by the clerk, and the sufficiency of the security approved by him. 2d. By "depositing a sufficient sum of money with the clerk to pay the costs."

By reference to the case of *Willis* v. *Potter* (9 Rich., 411), it will be seen how strictly the Court of Appeals construed the act of 1839 and rule 74, which are identical with our present statute and rule of court; for there it was held that an obligation endorsed on the declaration to become liable for the costs witnessed by an attorney, and not by the clerk of the court, was insufficient; and his honor, Judge Munro, in delivering the opinion of the court, used this strong language: "Unless an order requiring a party to enter security for costs be strictly complied with in conformity with the requirements of the section of the act and the rule of court referred to, the party neglecting to comply must expect to take the consequences that were so properly visited by the Circuit Judge upon the plaintiffs in this case."

Now, in the present case there is no pretence that there was any attempt to comply with the order requiring security for costs by giving the undertaking in the prescribed form, but the plaintiffs rely upon a compliance in the second mode allowed by the rule, viz., by depositing a sum of money sufficient to pay the costs. The only question, then, is whether such a sum of money was in fact deposited. It is conceded that no actual money was deposited, and therefore the inquiry is narrowed down to the question whether Mr. Thomson's note can be regarded as money. It is quite clear that the note of no person, however abundantly solvent, is regarded in law as money. It is nothing more than a promise to pay money—an evidence of debt. It does not pass in the community *as money.* If it passes at all, it does so as a

negotiable security, and not as money. Hence, although Mr. Thomson's note has been shown to be perfectly good, yet we do not think it can be regarded as money, the deposit of which alone would be a compliance with the order, for the rule is express that *"no other security"* shall be sufficient.

In view of the express and positive requirement of the rule, and in face of the direct decision above cited, we do not see how it is possible for us to hold that the deposit of Mr. Thomson's note, though conceded to be perfectly good, was a compliance with the order requiring security for costs. We may add that, remembering the unpleasant consequences which resulted from an attempt to comply with an order requiring security for costs, by the deposit of the "memorandum check" of one of plaintiff's counsel, as may be seen by reference to the case of *The State* v. *Hunt* (4 Strob., 322), it seems to us that the wisdom and propriety of a strict construction of the rule of court is fully vindicated; for although the well known courtesy and sense of propriety which have always characterized the professional conduct of the counsel engaged in this cause, might render such unpleasant consequences highly improbable in this case, yet we must bear in mind the fact that we are declaring a rule applicable to *all* cases, and must not be influenced by the fact that the character of the parties concerned in a particular case may not call for a rigid construction of the rule in such case.

It is contended, however, that under the statements made in the affidavit of Mr. Thomson, the transaction between him and the clerk, Trimmier, should be regarded as a loan by Trimmier to Thomson of the amount of money specified in the note, and an immediate deposit by Thomson of that sum of money with Trimmier as clerk. While we cannot for a moment doubt that Mr. Thomson so understood the transaction, yet it appears from the affidavit of Mr. Sanders that Trimmier did not so understand it; and to avoid just such misunderstandings is another reason for requiring a rigid compliance with the express requirements of the rule of court. But, in addition to this, we cannot regard the testimony of Mr. Thomson as to the understanding between himself and Trimmier, in so far as it tends to contradict or vary the terms of the note, as competent evidence. It is not necessary to

cite authority to show that while parol evidence may be offered
to explain, or even contradict, a receipt, such evidence is not
competent to vary or contradict the terms of a note. Hence,
while it was competent to show that, although the receipt pur-
ported to acknowledge the deposit of the sum of money therein
mentioned, no money was in fact deposited; yet we do not under-
stand that it was competent to show that the note was not what
it purported to be. The note must be regarded as what it pur-
ports to be—simply a promise by Thomson to pay Trimmier as
clerk, whenever called for, the amount of money which it had
been ascertained was proper and necessary to secure the payment
of the costs ; and its terms clearly negative the idea that any
money was ever paid to or deposited with the clerk.

The only remaining inquiry is, whether the plaintiffs should
not have been allowed further time to comply with the order
requiring security for costs. A conclusive answer to this is that
it does not appear that any such application was made to Judge
Kershaw, or that he made any ruling in reference thereto. In
this respect the case differs materially from *McMillan* v. *McCall*
(2 S. C., 390), where such an application was made to, and
granted by, the Circuit Judge. But even if such application
had been made to Judge Kershaw, we do not see how it could
have been granted. The order of Judge Aldrich, after the time
limited for compliance therewith had expired, was final, and could
not be reviewed, modified, or reversed by his successor. As is
said in *McCollum* v. *Massey*, 2 Bail., 606: "An order for
security for costs by a given day, and if the requisition be not
complied with, that the plaintiffs be non-suited, is final after the
expiration of the time limited." The reason given is that it
then becomes authority for the entry of judgment—is, in fact, a
final judgment. We do not see why a defendant could not at
once, upon the expiration of the time limited, enter judgment of
non-suit, without any further order to that effect; though, per-
haps, the safer and better practice would be to obtain such fur-
ther order, finally adjudicating the fact that the security for costs
had not been entered within the time allowed for that purpose.
Here the right to enter judgment of non-suit followed from Judge
Aldrich's order, which in express terms so provided in the event

of the failure of the plaintiffs to comply, and the only question was, or could have been, whether they had complied with the terms of the order.

The case of *Williams* v. *Connor* (14 S. C., 621), cited by appellants, is not in point, for there the order requiring security for costs imposed no penalty for a non-compliance with its terms. It did not provide, as here, that the plaintiffs, on failing to comply, should be non-suited. It did not authorize the entry of a judgment, and was not, therefore, final in its character.

It is also claimed that the plaintiff was entitled to relief under the provisions of section 195 of the Code. Here, also, it would be sufficient to say that no such application was made to Judge Kershaw, and no facts appear in the "Case" upon which such relief, even if asked for, could have been granted. That section authorizes the court ''to relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect.'' It does not appear that the order of Judge Aldrich, or the failure to comply therewith, was the result of either mistake, inadvertence, surprise, or excusable neglect on the part of the plaintiffs. On the contrary, the plaintiffs stood on the ground that they had complied, and that is really the only question in the case, and, as we have seen, that ground cannot be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.